IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF MAINE, <br><br> Plaintiffs, <br><br> v. <br><br> SMITH COVE PRESERVATION TRUST, <br><br> Defendant. | Civil Action No. 1:17-cv-0009-JDL |

## **<u>CONSENT DECREE</u>**

## TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................................... 3
II.     JURISDICTION ......................................................................................................... 6
III.    PARTIES BOUND ...................................................................................................... 6
IV.     DEFINITIONS............................................................................................................. 7
V.      STATEMENT OF PURPOSE AND GENERAL PROVISIONS .................................... 11
VI.     PROVISION OF IN-KIND SERVICES........................................................................ 11
VII.    ACCESS AND INSTITUTIONAL CONTROLS ........................................................... 11
VIII.   FAILURE TO COMPLY WITH CONSENT DECREE .................................................. 16
IX.     COVENANTS NOT TO SUE BY PLAINTIFFS ........................................................... 18
X.      RESERVATION OF RIGHTS BY PLAINTIFFS .......................................................... 19
XI.     COVENANT NOT TO SUE BY SETTLING DEFENDANT.......................................... 22
XII.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION .................................. 23
XIII.   RETENTION OF RECORDS....................................................................................... 25
XIV.    NOTICES AND SUBMISSIONS................................................................................. 27
XV.     COMMUNITY RELATIONS ...................................................................................... 28
XVI.    RETENTION OF JURISDICTION............................................................................... 28
XVII.   INTEGRATION/APPENDICES .................................................................................. 29
XVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .................................... 29
XIX.    SIGNATORIES/SERVICE........................................................................................... 30
XX.     FINAL JUDGMENT ................................................................................................... 31

# I.  <u>BACKGROUND</u>

A.   The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), together with the State of Maine (the "State") and the Maine Department of Environmental Protection ("Maine DEP"), filed a joint complaint in this matter against Smith Cove Preservation Trust ("Settling Defendant").

B.   The United States and the State in their joint complaint seek, *inter alia*, reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the release or threatened release of hazardous substances at the Callahan Mine Superfund Site in Brooksville, Hancock County, Maine ("Site"), together with accrued interest, pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607.

C.   The United States in the joint complaint further seeks performance of response actions at the Site, consistent with the National Contingency Plan, 40 C.F.R. Part 300, as amended ("NCP"), pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.

D.   The State in the joint complaint further seeks a declaration of Settling Defendant's liability pursuant to the Maine Uncontrolled Hazardous Substance Sites Law, 38 M.R.S.A. §§ 1361-1371.

E.   By entering into this Consent Decree, Settling Defendant does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the joint complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.   The United States and the State have reviewed the Financial Information and

Insurance Information submitted by Settling Defendant to determine whether Settling Defendant

is financially able to pay response costs incurred and to be incurred at the Site.  Based upon this

Financial Information and Insurance Information, the United States and the State have

determined that Settling Defendant has limited financial ability to pay for response costs incurred

and to be incurred at the Site.

G.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the

National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the

*Federal Register* on September 5, 2002, 67 Fed. Reg. 56757.

H.   In response to a release or a substantial threat of a release of hazardous substances at

or from the Site,  EPA undertook response actions at the Site pursuant to Section 104 of

CERCLA, 42 U.S.C. § 9604, and will undertake additional response actions in the future.  EPA

began a Remedial Investigation and Feasibility Study ("RI/FS") for the Site in 2004 pursuant to

40 C.F.R. § 300.430.  In 2005, EPA signed an Administrative Order by Consent to allow the

State of Maine to complete the RI/FS ("RI/FS AOC," U.S. EPA Docket No. CERCLA-01-2005-

0022).

I.   The Record of Decision for Operable Unit 1 ("OU1 ROD") at the Site was issued by

EPA on September 30, 2009.  The OU1 ROD provides for *inter alia* capping of the tailings

impoundment; off-site disposal of polychlorinated biphenyl ("PCB")-contaminated soil;

subaqueous disposal of source area material, residential use area soil and contaminated sediment

in a confined aquatic disposal ("CAD") cell; and implementation of institutional controls to

prevent disturbance to the components of the remedy and long-term monitoring of compliance

with the restrictions. After the OU1 ROD was issued, in 2010, EPA divided the work covered by the OU1 ROD into two separate operable units – OU1 and OU3. The cleanup actions relating to the residential area soil and the PCB-contaminated soil remained as part of OU1, while the remaining components of the OU1 ROD were designated to be performed as part of OU3. EPA issued an Explanation of Significant Differences on September 30, 2013 documenting the above-described changes to the OU1 ROD.

J. In August 2010, EPA entered into a Settlement Agreement with the Maine Department of Transportation ("Maine DOT") for the implementation of the remedial design of OU1 and OU3. The OU1 remedial design was completed in September 2010, the tailings impoundment component of the OU3 remedial design was completed in August 2015, while the sediment, waste rock, and CAD cell components of the OU3 remedial design are ongoing.

K. Also in August 2010, EPA and Maine DEP entered into a State Superfund Contract for the OU1 ROD selected remedy, including both OU1 and OU3. In September 2010, EPA entered into a Cooperative Agreement to allow Maine DEP to become the lead for the implementation of OU1. The OU1 remedial action began in September 2010, and the cleanup of the residential use area was completed in 2010, while the cleanup of the PCB contaminated soil was completed in 2013.

L. At the time of the OU1 ROD in 2009, EPA determined that additional investigation would be necessary to finalize a cleanup plan for the groundwater and the waste/soil located outside of the OU1 ROD defined source areas and created Operable Unit 2 ("OU2"). The OU2 RI/FS will continue until sufficient data are collected to develop a cleanup plan for those areas, and is being performed by the State of Maine in accordance with the RI/FS AOC. However, an

Early Action Memorandum for OU2 was issued on September 30, 2009 and provides for the implementation of land use restrictions at the Site to prevent the installation of water supply wells and to prevent residential development.

M.   The United States, the State, and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will expedite cleanup of the Site and will avoid prolonged and complicated litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED.

## II.  JURISDICTION

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367, and 42 U.S.C. §§ 9606, 9607 and 9613(b) and also has personal jurisdiction over Settling Defendant and pendent subject matter jurisdiction over the claims arising under the laws of the State.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant consents to and shall not challenge entry or the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.   This Consent Decree is binding upon the United States, upon the State, and upon Settling Defendant and its heirs, successors and assigns.  Any change in ownership or corporate

or other legal status, including, but not limited to, any transfer of assets or real or personal

property, shall in no way alter the status or responsibilities of Settling Defendant under this

Consent Decree, except to the extent provided by Paragraph 11.

## IV.  DEFINITIONS

3.    Unless otherwise expressly provided herein, terms used in this Consent Decree

which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are

used in this Consent Decree or in any appendix attached hereto, the following definitions shall

apply:

a.    "Borrow Material" shall mean earthen material, such as rock and/or soil

encompassing overburden material such as topsoil, sand, silt, clay, gravel, cobbles, and boulders,

that is obtained from a location for the sole purpose of providing materials to perform any of the

response actions at the Site and that meets the specifications included in EPA or Maine DEP

approved design and planning documents, construction specifications and work plans for any

such response actions.  Borrow Material does not include "Spoils" as defined herein.

b.    "CERCLA" shall mean the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

c.    "Consent Decree" shall mean this Consent Decree and any appendix attached

hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent

Decree shall control.

d.    "Day" shall mean a calendar day.  In computing any period of time under this

Consent Decree, where the last day would fall on a Saturday, Sunday, or state or federal holiday,

the period shall run until the close of business (5:00 P.M.) of the next working day.

e. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

f. "Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

g. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

h. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i. "Financial Information and Insurance Information" shall mean those financial documents identified in Appendix C.

j. "Institutional Controls" shall mean the Proprietary Control and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (i) limit land, water and/or resource use to minimize the potential for human exposure to Waste Materials at the Site; (ii) limit land, water and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the remedial action; and/or (iii) provide information intended to modify or guide human behavior at the Site.

k. "Maine DEP" shall mean the Maine Department of Environmental Protection and any successor departments or agencies of the State.

l. "OU1 ROD" shall mean the EPA Record of Decision for Operable Unit 1, signed on September 30, 2009 by the Director, Office of Site Remediation and Restoration, EPA Region

1.

  m. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic

numeral or an upper or lower case letter.

  n. "Parties" shall mean the United States, the State of Maine, and the Settling

Defendant.

  o. "Plaintiffs" shall mean the United States and the State.

  p. "Property" shall mean certain lots or parcels of land situated in the town of

Brooksville, Hancock County, Maine, with improvements thereon, bounded and described in a

deed from Robert S. Mant to Smith Cove Protection Association, dated December 4, 1987, and

recorded in the Hancock County Registry of Deeds in Book 1671, Page 326.  A map depicting

the Property is attached hereto as Appendix A.

  q. "Proprietary Control" shall mean an environmental covenant pursuant to the

Maine Uniform Environmental Covenants Act , 38 M.R.S.A. § 3001 *et seq.*, that runs with the

land and (i) limits land, water, or resource use and provides access rights and (ii) is created by an

instrument that is recorded by the owner in the Hancock County Registry of Deeds.  A copy of

the Proprietary Control (Declaration of Environmental Covenant) executed by Settling

Defendant is attached hereto as Appendix B.

  r. "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C.

§ 6901, *et seq*. (also known as the Resource Conservation and Recovery Act).

  s. "Remedial Action" or "Remedy" shall mean the response actions at the Site

selected by EPA pursuant to the OU1 ROD, as modified, the OU2 Early Action Memorandum,

and subsequent decision documents issued in accordance with 40 C.F.R. §  300.430(f).

t. "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

u. "Settling Defendant" shall mean Smith Cove Preservation Trust (*f.k.a.* Smith Cove Protective Association, *a.k.a.* Smith Cove Protection Association).

v. "Site" shall mean the Callahan Mine Superfund Site, as described in the OU1 ROD, located in Brooksville, Hancock County, Maine, and including the Property.

w. "Spoils" shall mean any material, excluding Borrow Material, generated, removed, excavated, or otherwise obtained as a result of the implementation of any response action at the Site. Any trees that must be removed to implement the response actions at the Site, including trees removed for activities relating to the excavation of Borrow Material, shall be managed as Spoils.

x. "State" shall mean the State of Maine, including its departments, agencies and instrumentalities.

y. "Transfer" shall mean to sell, assign, convey, lease, mortgage or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

z. "United States" shall mean the United States of America, including its departments, agencies and instrumentalities, including EPA.

aa. "Waste Material" shall mean (i) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (ii) any "pollutant or contaminant" under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (iii) any "solid waste" under Section 1004(27) of RCRA, 42

U.S.C. § 6903(27); and (iv) any "hazardous substance" under the Maine Uncontrolled

Hazardous Substance Sites Law, 38 M.R.S.A. § 1362(1).

## V. <u>STATEMENT OF PURPOSE AND GENERAL PROVISIONS</u>

4.  By entering into this Consent Decree, the mutual objective of the Parties is to protect

public health or welfare or the environment by the implementation by Settling Defendant of its

obligations under this Consent Decree and to avoid difficult and prolonged litigation by allowing

Settling Defendant to provide valuable consideration to resolve its alleged civil liability under

Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606 and 9607, and under the Maine

Uncontrolled Hazardous Substance Sites Law, 38 M.R.S.A. §§ 1361-1371.

## VI. <u>PROVISION OF IN-KIND SERVICES</u>

5.  Settling Defendant gives to EPA and Maine DEP permission to remove and use,

without financial charge, Borrow Material, without limitation, located on the real property

owned or controlled by Settling Defendant located within the Site, including the Property, for use

in implementing response actions at the Site. These response actions include, but are not limited

to, the Remedial Action.

6.  Spoils excavated from the Site, including the Property, may be placed in any

location, including any location within the Property, that EPA and/or Maine DEP, within their

sole discretion, determines is necessary to perform any response action taken at the Site.

## VII. <u>ACCESS AND INSTITUTIONAL CONTROLS</u>

7.  With respect to the Site, or any other property owned or controlled by Settling

Defendant, where access and/or land/water use restrictions are needed to implement and

maintain the effectiveness of response activities at the Site, including the Property:

a.   Settling Defendant shall, commencing on the date of lodging of this Consent Decree, provide the United States and the State, and their representatives, contractors, and subcontractors, with access at all reasonable times for the purpose of conducting any activity relating to response action at the Site, including, but not limited to, the following activities:

i.   Monitoring, investigation, removal, remedial or other activities at the Site;

ii.   Verifying any data or information submitted to the United States or the State;

iii.   Conducting investigations relating to contamination at or near the Site;

iv.   Obtaining samples;

v.   Assessing the need for, planning, or implementing response actions at or near the Site;

vi.   Assessing Settling Defendant's compliance with this Consent Decree;

vii.   Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

viii.   Designing, implementing, monitoring, and performing operation and maintenance of any response actions at the Site;

ix.   Excavating and permanently removing Borrow Material, and excavating and permanently placing Spoils, consistent with Section VI (Provision of In-Kind Services) of this Consent Decree; and

x.   Implementing, monitoring, maintaining, reporting on and enforcing any Institutional Controls.

b.   Commencing on the date of lodging of this Consent Decree, Settling Defendant shall not use the Site, or such other real property, including the Property, in any manner that EPA or Maine DEP determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Materials or interfere with or adversely affect the implementation, integrity, or protectiveness of the removal or remedial measures to be performed at the Site. These restrictions shall include, but not be limited to:

i.   Not providing public access to third parties without notice and authorization from EPA and Maine DEP during EPA's and Maine DEP's implementation of response actions, including monitoring, operation and maintenance of any response actions;

ii.   Avoiding any areas where EPA or Maine DEP is implementing a response action, including monitoring, operation and maintenance of any response actions, unless notice is provided to EPA and Maine DEP in advance and EPA and Maine DEP agree that the presence of Settling Defendant is acceptable; and

iii.   Avoiding any activities that would interfere with or compromise the integrity of the land that is subject to response actions, including monitoring, operation and maintenance of any response actions, including, but not limited to: constructing any buildings or facilities; subdivision; drilling well(s) for drinking water; and using or disturbing the groundwater system; and

c.   Settling Defendant shall:

i.   Within 30 days of the Effective Date, record in the Hancock County Registry of Deeds a Proprietary Control (referred to under Maine law as an "Environmental Covenant") that: (a) grants a right of access to conduct any activity regarding the Consent Decree

including, but not limited to, those activities listed in Paragraph 7(a) of this Consent Decree, and (b) grants the right to enforce the land use restrictions set forth in Paragraph 7(b) of this Consent Decree, including, but not limited to, the specific restrictions listed therein.

      A.   The Proprietary Control grants access rights to the State and the rights to enforce the land use restrictions to Maine DEP on behalf of the State.  The Proprietary Control includes a designation of EPA as an "agency," as defined by 38 M.R.S.A. § 3002(2) of the Maine Uniform Environmental Covenants Act, allowing EPA to enforce the Proprietary Control without acquiring an interest in real property, as well as, *inter alia*, providing EPA and Maine DEP with access to the Property.

      B.   The Proprietary Control, a copy of which is attached hereto as Appendix B, that is enforceable under state law, was executed by Settling Defendant after providing EPA and Maine DEP a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Control to be free and clear of all prior liens and encumbrances (except when EPA and Maine DEP waive the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

      ii.    Within 30 days of recording the Proprietary Control, provide EPA and Maine DEP with a final title insurance policy, or other final evidence of title acceptable to EPA and Maine DEP, and a certified copy of the original recorded Proprietary Control showing the clerk's recording stamps.

8.    For purposes of Paragraph 7, "best efforts" includes the payment of reasonable sums of money to obtain an agreement to release or subordinate a prior lien or encumbrance.  If EPA determines that evidence of title provided in accordance to Paragraph 7(c)(ii) above shows that Settling Defendant is unable to obtain agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Control, following EPA's determination, Settling Defendant shall promptly provide the United States, EPA, and Maine DEP in writing a summary of the steps that Settling Defendant has taken to attempt to obtain such agreements.  The United States may, as it deems appropriate, assist Settling Defendant in obtaining the release or subordination of a prior lien or encumbrance.

9.    Settling Defendant shall not Transfer its Property or any portion thereof without first securing EPA's and the State's approval of, and transferee's consent to, an agreement that: (i) is enforceable by the United States and the State; and (ii) requires the transferee to provide access to and to refrain from using the Property or any portion thereof to the same extent as is provided under Paragraph 7.

10.    Notice to Successors-in-Title.  Settling Defendant shall, prior to entering into a contract to Transfer its Property or any portion thereof, or 60 days prior to Transferring its Property or any portion thereof, whichever is earlier:

a.    Notify the proposed transferee that EPA and the State performed a response action regarding the Site; and

b.    Notify EPA and the State of the name and address of the proposed transferee, and provide EPA and the State with a copy of the above notice that it provided to the proposed transferee.

11. In the event of any Transfer of the Property or any portion thereof, unless the United States and the State otherwise consent in writing, Settling Defendant shall continue to comply with its obligations under the Consent Decree, except for the prospective obligations in Paragraph 7 to the extent they require Settling Defendant to provide access to, or to abide by any land, water, or other resource use restrictions regarding the Property or portion thereof that was Transferred.

12. If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, Settling Defendant shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such governmental controls.

13. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable federal or state statute or regulations.

## VIII.  FAILURE TO COMPLY WITH CONSENT DECREE

14. Stipulated Penalty.

a. If Settling Defendant fails to comply with Section VI (Provision of In-Kind Services) and Section VII (Access and Institutional Controls) of this Consent Decree, Settling Defendant shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, five thousand dollars ($5,000.00) per violation per day of such noncompliance.

b. Stipulated penalties are due and payable within 30 days of the date of written demand for payment of the penalties by EPA.  All payments to EPA under this Paragraph shall

be identified as "stipulated penalties" and shall be made by official bank check made payable to

"EPA Hazardous Substance Superfund."  The check, or letter accompanying the check, shall

reference the name and address of Settling Defendant, the Site name, the EPA ID #

MED980524128, Site ID # 0101028, DOJ Case Number 90-11-3-09953, the Consolidated Debt

Collection System ("CDCS") Number, and the civil action number for this action, and shall be

sent to:

> U.S. Environmental Protection Agency
> Superfund Payments
> Cincinnati Finance Center
> PO Box 979076
> St. Louis, MO 63197-9000

     c.   At the time of each payment, Settling Defendant shall send notice that payment

has been made to EPA and DOJ in accordance with Section XIV (Notices and Submissions), and

to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH 45268

Such notice shall reference the name and address of Settling Defendant, the Site name, the EPA

ID # MED980524128, Site ID # 0101028, DOJ Case Number 90-11-3-09953, the Consolidated

Debt Collection System ("CDCS") Number, and the civil action number for this action.

     d.   Penalties shall accrue as provided in this Paragraph regardless of whether EPA

has notified Settling Defendant of the violation or made a demand for payment, but need only be

paid upon demand.  All penalties shall begin to accrue on the day after performance is due or the

day a violation occurs, and shall continue to accrue through the final day of correction of the

noncompliance or completion of the activity.  Nothing in this Consent Decree shall prevent the

simultaneous accrual of separate penalties for separate violations of this Consent Decree.

15.   If the United States or the State brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States and the State for all costs of such action, including but not limited to costs of attorney time.

16.   Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

17.   Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendant from performance of any other requirements of this Consent Decree.

## IX.   COVENANTS NOT TO SUE BY PLAINTIFFS

18.   Covenant Not to Sue by United States.  Except as specifically provided in Section X (Reservation of Rights by Plaintiffs), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), with regard to the Site.  With respect to present and future liability, this covenant shall take effect upon the Effective Date.  This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including those identified in Section VI (Provision of In-Kind Services), Section VII (Access and Institutional Controls), and Section VIII (Failure to Comply with Consent Decree).  This covenant is also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to EPA and Maine DEP by

Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in Paragraph 34. This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

19. <u>Covenant Not to Sue by the State of Maine</u>. Except as set forth in Section X (Reservation of Rights by Plaintiffs), the State of Maine covenants not to sue or take administrative action against Settling Defendant at the Site pursuant to Sections 106 and 107(a) of CERCLA or state law. With respect to present and future liability, this covenant shall take effect upon the Effective Date. This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree, including those identified in Section VI (Provision of In-Kind Services), Section VII (Access and Institutional Controls), and Section VIII (Failure to Comply with Consent Decree). This covenant is also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to EPA and Maine DEP by Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in Paragraph 34. This covenant not to sue extends only to Settling Defendant and does not extend to any other person or entity.

## X.  <u>RESERVATION OF RIGHTS BY PLAINTIFFS</u>

20. <u>Reservation of Rights by United States</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 18. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.   liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b.   criminal liability;

c.   liability for damages for injury to, destruction of, or loss of natural resources;

d.   liability based on the ownership or operation of the Site by Settling Defendant when such ownership or operation commences after signature of this Consent Decree;

e.   liability, based upon Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a Waste Material at or in connection with the Site, after signature of this Consent Decree by Settling Defendant; and

f.   liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

21.   Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 34, is false or, in any material respect, inaccurate.

22.   Reservation of Rights by the State of Maine.  The State of Maine reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by the State of Maine in

Paragraph 19.  Notwithstanding any other provision of this Consent Decree, the State of Maine reserves all rights against Settling Defendant with respect to:

a.   liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

b.   criminal liability;

c.   liability for damages for injury to, destruction of, or loss of natural resources;

d.   liability based on the ownership or operation of the Site by Settling Defendant when such ownership or operation commences after signature of this Consent Decree;

e.   liability, based upon Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a Waste Material at or in connection with the Site, after signature of this Consent Decree by Settling Defendant; and

f.   liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

23.   Notwithstanding any other provision of this Consent Decree, the State of Maine reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in Paragraph 34, is false or, in any material respect, inaccurate.

## XI.  COVENANT NOT TO SUE BY SETTLING DEFENDANT

24.  Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site and this Consent Decree, including but not limited to:

a.   any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.   any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, state law, or at common law; or

c.   any claims under Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, and any claims under the Maine Uncontrolled Hazardous Substance Site Law, 38 M.R.S.A. §§ 1361-1371, relating to the Site.

25.  Except as provided in Paragraph 27 (Waiver of Claims) and Paragraph 31 (Res Judicata and Other Defenses), these covenants not to sue shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 20 and 22, but only to the extent that Settling Defendant's claims arise from the same response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

26. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

27. Settling Defendant agrees not to assert any CERCLA claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for all matters relating to the Site or against any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XII.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

28. Except as provided in the preceding Paragraph 27, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Paragraph 27, each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2). Nothing in this Consent Decree diminishes the right of the State of Maine pursuant to Section 113(f)(1)-(3)

of CERCLA, 42 U.S.C. § 9613(f)(1)-(3), and 38 M.R.S.A. § 1367, to pursue any such persons to

obtain additional response costs or response action and to enter into settlements that give rise to

contribution protection pursuant to Section 113(f)(2) of CERCLA or 38 M.R.S.A. § 348(4).

29. The Parties agree, and by entering this Consent Decree this Court finds, that this

settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of

CERCLA, 42 U.S.C. § 9613(f)(2), and 38 M.R.S.A. § 348(4), and that Settling Defendant is

entitled, as of the Effective Date, to protection from contribution actions or claims as provided

by Sections 113(f)(2) of CERCLA and 38 M.R.S.A. § 348(4) or as may be otherwise provided

by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent

Decree are all response actions taken or to be taken and all response costs incurred or to be

incurred, at or in connection with the Site, by the United States, the State, or any other person;

provided, however, that if the United States or the State exercises rights under reservations in

Paragraphs 20 and 22 (Reservations of Rights by United States and State of Maine), other than in

Paragraphs 20(a) and 22(a) (claims for failure to meet a requirement of the Decree) or

Paragraphs 20(b) and 22(b) (criminal liability), the "matters addressed" in this Consent Decree

will no longer include those response costs or response actions that are within the scope of the

exercised reservation.

30. Settling Defendant shall, with respect to any suit or claim brought by it for matters

related to this Consent Decree, notify EPA, DOJ, and the State in writing no later than 60 days

prior to the initiation of such suit or claim. Settling Defendant shall, with respect to any suit or

claim brought against it for matters related to this Consent Decree, notify EPA, DOJ, and the

State in writing within 10 days of service of the complaint or claim upon it. In addition, Settling

Defendant shall notify EPA, DOJ and the State within 5 days of service or receipt of any Motion

for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for

trial, for matters related to this Consent Decree.

31. In any subsequent administrative or judicial proceeding initiated by the United States

or the State for injunctive relief, recovery of response costs, or other relief relating to the Site,

Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the

principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other

defenses based upon any contention that the claims raised by the United States or the State in the

subsequent proceeding were or should have been brought in the instant case; provided, however,

that nothing in this Paragraph affects the enforceability of the Covenants Not to Sue by Plaintiffs

set forth in Section IX.

## XIII. <u>RETENTION OF RECORDS</u>

32. Until 10 years after the entry of this Consent Decree or one year after the Transfer of

its Property, Settling Defendant shall preserve and retain all non-identical copies of all records,

reports, or information (hereafter referred to as "Records") (including Records in electronic

form) now in its possession or control, or which come into its possession or control, that relate in

any manner to response actions taken at the Site or the liability of any person under CERCLA or

Maine law with respect to the Site, regardless of any corporate retention policy to the contrary.

33. After the conclusion of the document retention period in the preceding paragraph,

Settling Defendant shall notify EPA, DOJ, and the State at least 90 days prior to the destruction

of any such Records, and, upon request by EPA, DOJ or the State, Settling Defendant shall

deliver any such records to EPA and/or Maine DEP. Settling Defendant may assert that certain

Records are privileged under the attorney-client privilege or any other privilege recognized by federal or state law.  If Settling Defendant asserts such a privilege, it shall provide Plaintiffs with the following:  (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (*e.g.* company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and the State in redacted form to mask the privileged portion only.  Settling Defendant shall retain all records that it claims to be privileged until the United States and the State have had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor.  However, no Records created or generated pursuant to the requirements of this or any other settlement with EPA pertaining to the Site shall be withheld on the grounds that they are privileged or confidential.

34.  Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a.  not altered, mutilated, discarded, destroyed or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the State or the filing of suit against it regarding the Site, and that it has fully complied with any and all EPA and Maine DEP requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and 38 M.R.S.A. § 1364;

b.  submitted to EPA and the State financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to EPA and the State and the time Settling Defendant executes this Consent Decree; and

c.  fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to EPA upon request such insurance policies, indemnity agreements, and information.

## XIV.  NOTICES AND SUBMISSIONS

35.  Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, the State, Maine DEP, and Settling Defendant, respectively.

As to the United States:  Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7661
Washington, D.C.  20044-7611
Re: DJ # 90-11-3-09953

As to EPA:  Ed Hathaway, Remedial Project Manager
United States Environmental Protection Agency
Office of Site Remediation & Restoration
5 Post Office Square, Suite 100
Mail Code OSRR07-1
Boston, MA  02109-3912

As to the State:              Peter B. LaFond
                                  Assistant Attorney General
                                  6 State House Station
                                  Augusta, ME 04333-0006

As to Maine DEP:           Naji Akladiss
                                  Environmental Specialist III
                                  17 State House Station
                                  Augusta, ME 04333-0017

As to Settling Defendant:    Smith Cove Preservation Trust
                                  c/o Joseph D. Lonardo
                                  Vorys, Sater, Seymour and Pease LLP
                                  1909 K Street, N.W., Suite 900
                                  Washington, D.C.  20006-1152

## XV.  COMMUNITY RELATIONS

36.  If requested by EPA or the State, Settling Defendant shall participate in community relations activities.  EPA will determine the appropriate role for Settling Defendant.  Settling Defendant shall also cooperate with EPA and the State in providing information regarding activities at or relating to the Site.  As requested by EPA or the State, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA or the State to explain activities at or relating to the Site.

## XVI.  RETENTION OF JURISDICTION

37.  This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII.  INTEGRATION/APPENDICES

38.  This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendices are attached to and incorporated into this Consent Decree: "Appendix A" is a map depicting the Property.  "Appendix B" is a copy of the Proprietary Control (Declaration of Environmental Covenant) executed by Settling Defendant.  "Appendix C" is a list of the financial documents submitted to EPA and Maine DEP by Settling Defendant.

## XVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

39.  This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. The State may withdraw or withhold its consent to the entry of this Consent Decree if comments received disclose facts or considerations showing that the Consent Decree violates state law. The United States reserves the right to challenge in court the State withdrawal from the Consent Decree, including the right to argue that the requirements of state law have been waived, pre-empted, or otherwise rendered inapplicable by federal law.  The State reserves the right to oppose the United States' position taken in opposition to the proposed withdrawal.  In addition, in the event of the United States' withdrawal from this Consent Decree, the State reserves the

right to withdraw from this Consent Decree.  Settling Defendant consents to the entry of this

Consent Decree without further notice.

42. If for any reason the Court should decline to approve this Consent Decree in the form

presented, this agreement is voidable at the sole discretion of any Party and the terms of the

agreement may not be used as evidence in any litigation between the Parties.

## XIX.  SIGNATORIES/SERVICE

41.  Each undersigned representative of Settling Defendant, the Assistant Attorney

General for the Environment and Natural Resources Division of the Department of Justice, the

Assistant Attorney General for the State of Maine, and the Commissioner for Maine DEP,

certifies that he or she is fully authorized to enter into the terms and conditions of this Consent

Decree and to execute and legally bind such Party to this document.

42.  Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this

Court or to challenge any provision of this Consent Decree unless the United States has notified

Settling Defendant in writing that it no longer supports entry of the Consent Decree.

43.  Settling Defendant shall identify, on the attached signature page, the name, address

and telephone number of an agent who is authorized to accept service of process by mail on

behalf of Settling Defendant with respect to all matters arising under or relating to this Consent

Decree.  Settling Defendant hereby agrees to accept service in that manner and to waive the

formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any

applicable local rules of this Court, including, but not limited to, service of a summons.  The

Parties agree that Settling Defendant need not file an answer to the complaint in this action

unless or until the Court expressly declines to enter this Consent Decree.

## XX.  **FINAL JUDGMENT**

44.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


**SO ORDERED.**

Dated:  April 18, 2017

**/s/ Jon D. Levy**
**U.S. DISTRICT JUDGE**

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and State of Maine v. Smith Cove Preservation Trust*, relating to the Callahan Mine Superfund Site.


FOR PLAINTIFF UNITED STATES OF AMERICA



JOHN C. CRUDEN
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division


January 6, 2017                              /s/Keith T. Tashima
_____                    _____
Date                                          KEITH T. TASHIMA
                                              Senior Attorney
                                              United States Department of Justice
                                              Environment & Natural Resources Division
                                              Environmental Enforcement Section
                                              P.O. Box 7611
                                              Washington, DC 20044-7611
                                              (202) 616-9643
                                              keith.tashima@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and State of Maine v. Smith Cove Preservation Trust*, relating to the Callahan Mine Superfund Site.


FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY


September 29, 2016                          /s/Michael P. Kenyon, for
_____          _____
Date                                                H. CURTIS SPALDING
                                                       Regional Administrator, Region 1
                                                       U.S. Environmental Protection Agency
                                                       5 Post Office Square, Suite 100
                                                       Boston, Massachusetts 02109-3912



September 27, 2016                          /s/Man Chak Ng
_____          _____
Date                                                MAN CHAK NG
                                                       Senior Enforcement Counsel
                                                       U.S. Environmental Protection Agency
                                                       5 Post Office Square, Suite 100
                                                       Boston, Massachusetts 02109-3912

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and State of Maine v. Smith Cove Preservation Trust*, relating to the Callahan Mine Superfund Site.


FOR PLAINTIFF STATE OF MAINE

                                        JANET T. MILLS
                                        Attorney General

October 27, 2016                        /s/Peter B. LaFond
_____                  _____
Date                                    PETER B. LAFOND
                                        Assistant Attorney General
                                        Office of the Attorney General
                                        6 State House Station
                                        Augusta, Maine 04333-0006
                                        207-626-8511
                                        Peter.LaFond@maine.gov



FOR THE MAINE DEPARTMENT OF ENVIRONMENTAL PROTECTION


October 24, 2016                        /s/Paul Mercer
_____                  _____
Date                                    PAUL MERCER
                                        Commissioner
                                        Maine Department of Environmental Protection
                                        17 State House Station
                                        Augusta, Maine 04333-0017

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States of America and State of Maine v. Smith Cove Preservation Trust*, relating to the Callahan Mine Superfund Site.

FOR DEFENDANT SMITH COVE PRESERVATION TRUST

September 23, 2016                          /s/James Benenson, Jr.
_____                  _____
Date                                               JAMES BENENSON, JR.
                                                     Trustee for Smith Cove Preservation Trust
                                                     8223 Brecksville Road, Suite #100
                                                     Brecksville, OH 44141

September 22, 2016                          /s/John V. Curci
_____                  _____
Date                                               JOHN V. CURCI
                                                     Trustee for Smith Cove Preservation Trust
                                                     8223 Brecksville Road, Suite #100
                                                     Brecksville, OH 44141

Agent Authorized to Accept Service on Behalf of Smith Cove Preservation Trust:

          Name (print):  Joseph D. Lonardo

          Title:            Attorney

          Address:        1909 K Street, N.W., Suite 900

                             Washington, D.C. 20006-1152

          Phone No.:      (202) 467-8811